TATE, Judge.
This is a workmen’s compensation proceeding. While at work on November 2, 1955, the plaintiff Castille was struck behind his left knee. This suit against his employer’s insurer is to claim compensa-, tion benefits allegedly due because of a residual disability resulting from the accident. After an extensive trial, the District Court dismissed the plaintiff’s suit on the ground that he had failed to bear his burden of proving that any condition residual from the accident was disabling beyond the period for which payments in lieu of compensation were received by him.
The evidence reflects that, as a result of the accident, a condition known as oste-ochondritis dissecans was aggravated in the plaintiff’s left knee. Two radiologists testifying on behalf of the plaintiff, viewing all the x-rays taken of the plaintiff’s left knee during the three years intervening between the accident and the trial, concluded : that the osteochondritis dissecans in the plaintiff’s left knee had enlarged (by definite measurements on the x-rays) from shortly following the accident until early in 1958, although at the trial in October, 1958 the condition was probably in a static state; and that the cause of the progression or aggravation was the accident at work.
The substantial question of this appeal is whether the plaintiff is disabled by this condition of osteochondritis dissecans in his left knee, aggravated as it was by the accident, at the particular stage of the disease reflected by the evidence to have existed before and at the time of the trial below.
*420 The evidence shows that an osteochon-dritis dissecans is a portion of the cartilage which loses its blood supply and becomes dead. It may remain as a latent defect in the cartilage or it may become loose and become a painful and disabling “joint mouse” within the knee joint. While medical opinion differs as to the causation of this condition, the preponderance of the medical opinion in the record is that a trauma may aggravate the development of the condition; and the preponderance of the medical evidence indicates that the latent condition in plaintiff’s knee was indeed aggravated by the accident in question.
The radiologists, who were conceded to be more competent to diagnose the presence of the condition, admitted frankly that the orthopedists were more competent to evaluate the disability or symptoms resulting from the presence of the condition; although one of the radiologists stated that, in “most” cases, x-ray findings such as existed in the present case would indicate pain (Tr. 192-193). The four orthopedists who testified were: Doctors Morin and Hatchette for the defendant, and Doctors Briel and Campanella for the plaintiff.
Interestingly enough, both of the orthopedists testifying for the defendant were of the opinion prior to the trial that there was no osteochondritis dissecans in plaintiff’s knee; but at the trial, upon being shown various other x-rays than those they had previously examined, admitted that the condition indeed existed. Further, because of these x-ray findings, Dr. Morin concluded that the plaintiff was disabled (Tr. 346-347). Dr. Hatchette also admitted that it was a disabling condition (Tr. 161-162); however, qualifying his opinion by stating that, when no loose body from the osteochondritis dissecans interferes with the joint motion, then the patient is free from pain, although “as a condition it is considered to be generally symptomatic,” Tr. 166-167. Dr. Hatchette also stated that “sometimes they [the patients with a condition of osteochondritis dissecans] have pain the knee, and sometimes they do not, but it always comes back as loose body goes through the joint” (Tr. 168-169).
We think that the testimony of the radiologists and of the orthopedists whom the defendant produced, together with plaintiff’s continued and consistent complaints of pain in the knee dating from the accident (and not before), would certainly justify a finding that the plaintiff was totally and permanently disabled. Though from time to time he might be symptom-free, the condition produced by the aggravation of osteochondritis dissecans in his knee would inevitably recur, according to such testimony, and hard work would accelerate its reoccurrence.
However, the orthopedists called by the plaintiff testified that due to the vague and unlocalized symptoms of which the plaintiff complained, they were unable to say definitely that osteochondritis dissecans was causing the claimant’s symptoms, which they ascribe to other causes. They were also unable to conclude that the plaintiff was unable to work on the date of their respective examinations. Both of these orthopedists were of the opinion that the osteochondritis dissecans may remain as a latent and asymptomatic defect which, although permanent, would not necessarily become loosened into disabling “joint mice”. Further, Dr. Campanella positively stated that “enough time had passed” since the presence of the disease in the plaintiff’s knee so that he “has passed that danger” of further joint mice. Tr. 56.
Both of these orthopedists testifying for the plaintiff further stated that they felt he could return to work, but that as soon as the claimant did return to work, hard work “will cause it to flare up” if the condition was disabling. (Tr. 224.) On the other hand it is to be observed that these orthopedists were not shown the entire series of x-rays, as were the radiologists and the orthopedists testifying for *421 the defendants; although we are unable to say that the former two orthopedists would have reached the same opinion that the condition was definitely present and disabling as did the latter four specialists had such opportunity also been afforded them to evaluate the entire progress of the condition.
Based upon this medical evidence [1], our learned trial brother concluded that the evidence failed to establish that the claimant was disabled by his osteochondritis dis-secans. In so finding, our trial brother must have accepted the testimony of the two orthopedists whose testimony was taken by the plaintiff to the effect that an osteochondritis dissecans may be present, but may be non-disabling (at least after so long a period without producing objective evidence of the presence of joint mice interfering with the motion of the joint).
The trial court must have further (in accepting their testimony that the patient’s subjective complaints of pain, if true, can actually be the only proof of pain)[2] concluded that the patient’s continued complaints of pain and limitation in the use of his left knee were not sincere or were greatly exaggerated. For if the trial court believed that plaintiff’s complaints of pain were genuine, then under the preponderance of the medical evidence the complaints of pain in and limitation of the left knee are indeed caused by the osteochondritis dissecans in plaintiff’s left knee as aggravated by the industrial accident in question.
Thus the specialists testifying on behalf of the plaintiff were unable to say that the osteochondritis dissecans produced disabling complaints; and whether it did so depends, under their testimony, upon an evaluation of the credibility of the claimant. We are unable to hold that the trial court committed manifest error in discounting the plaintiff’s testimony of complaints and in holding that he had not proved his disability by a preponderance of the evidence.
But in thus affirming the trial court’s determination, we must admit that we are troubled because the trial court did not specifically evaluate the plaintiff’s credibility unfavorably, merely stating generally that the claimant had not proven that the condition was disabling. The “courts will not impute perjury to apparently credible witnesses,” Cockrell v. Penrod Drilling Co., 214 La. 951, 39 So.2d 429, 432; and the “courts will stigmatize a claimant as a malingerer only upon positive and convincing evidence justifying such a conclusion”, Miller v. U. S. Fidelity and Guaranty Co., La.App. 2 Cir., 99 So.2d 511, 516.
In nevertheless affirming the trial court’s evaluation of the plaintiff’s credibility as not manifestly erroneous, we note that the testimony of virtually all specialists who examined the plaintiff was to the effect that there was, objectively, no evidence of limitation of motion or knee-lock, such as would verify the disabling nature of the plaintiff’s condition shown by the x-rays. We further note that, although the plaintiff’s orthopedists had advised his return to work, both as therapy for his disused muscles and also because a return to work in their opinion would soon produce an objective verification of the disabling nature of the condition, the plaintiff testified that he had not done so prior to the trial. (He explained that he was unable to get work because he was disabled, but he admitted that *422 he had only tried to do so once following his discharge by his employer.)
Taking the record as a whole, we cannot say that the trial court committed manifest error in apparently discounting the sincerity of the plaintiff’s complaints of pain and knee-lock and in therefore holding that he had not proved any disability residual from the accident so as to entitle him to further compensation benefits.
Accordingly, the judgment of the District Court dismissing this suit is
Affirmed.

. A general surgeon testified for the defendant and a general practitioner for the plaintiff reaching contrary opinions as to disability; but neither of these medical witnesses was given an opportunity to (or shown to be qualified to) evaluate the condition of osteochondritis dissecans reflected by the x-rays.

. Cf., testimony of Dr. Briel at Tr. 223: “In a case of this kind yon can’t be certain because you iiave no specific test to determine what one little tiny area on the lining of the joint, what symptoms it is going to produce * * * ”